Andre COLE, Petitioner–Appellee

v.

Donald P. ROPER, Respondent–Appellant.

No. 15–1751.

United States Court of Appeals, Eighth Circuit.

Submitted: April 14, 2015.

Filed: April 14, 2015.

Carol R. Camp, Joseph Luby, Kansas City, MO, for appellant.

Caroline Coulter, AAG, Gregory Michael Goodwin, AAG, Michael Joseph Spillane, AAG, and Stephen David Hawke, AAG, Jefferson City, MO, for appellee.

Before BYE, BEAM, and GRUENDER, Circuit Judges.

BEAM, Circuit Judge.

On March 23, 2015, Andre Cole, a Missouri prisoner subject to a sentence of death scheduled to be carried out April 14, 2015, filed in the Missouri Supreme Court a petition for a writ of habeas corpus, claiming he was incompetent to be executed under *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and *Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). In support of his petition in Missouri state court, Cole submitted a report by Dr. William S. Logan, a forensic psychiatrist, who interviewed him for two-and-one-half hours. Dr. Logan concluded that Cole's mental state prevented him from comprehending or forming a rational understanding of the reason for the execution to which he has been sentenced. Cole also submitted the affidavits of his current and former counsel who state that Cole's mental condition has deteriorated over the last four years and that he suffers from auditory hallucinations.

In response, the state submitted the record of a routine wellness check conducted by Dr. Alwyn Whitehead, a psychologist employed by Corizon Medical Services. The wellness check was conducted at Cole's cell door. Dr. Whitehead reported that Cole denied "any hallucinatory experiences and there were no overt symptoms of severe depression, mania, or psychosis." Dr. Whitehead conducted the entire wellness check in fifteen minutes. The state also submitted recordings and transcripts from four telephone calls made by Cole to unknown persons wherein Cole discussed various topics, including execution issues in other states, that he was placed on "pre-execution" status, the execution drugs, and his opinion that the prosecutor's story that he stabbed the victim while he had a gun did not make sense. Cole then filed a supplemental report from Dr. Logan re-

sponding to the state's submissions, and Dr. Logan concluded that nothing filed by the state altered his original conclusions regarding Cole's mental state.

Because a petition for writ of habeas corpus is an original action in Missouri, the Missouri Supreme Court served as the fact-finder for Cole's competency challenge. Mo. S.Ct. Rule 84.22 and 91.01. The court analyzed Cole's claim within the framework of *Ford* and *Panetti,* specifically noting the presumption of competency afforded to a prisoner who has previously been judged competent to stand trial, which can only be overcome by a substantial threshold showing of insanity. *Ford,* 477 U.S. at 426, 106 S.Ct. 2595. The Missouri Supreme Court also found that unlike the petitioners in both *Ford* and *Panetti,* Cole was afforded the opportunity to offer his own expert opinion and attorney affidavits in support of his claims. Accordingly, the court found that "even assuming Mr. Cole's evidence makes a substantial showing of incompetency, he has received all process to which he is entitled under *Ford* and *Panetti.*" *Missouri ex rel. Cole v. Griffith,* No. SC94880, Maj. Slip Op. 16 (Mo. April 9, 2015). The court went on to thoroughly review Cole's and the state's proffered evidence and found that Cole rationally understood his death sentence and the reasons for it. *Id.* at 16–22.

Cole filed the current supplemental petition for habeas corpus pursuant to 28 U.S.C. § 2254, along with a motion for stay of execution. The district court concluded that the Missouri Supreme Court unreasonably applied *Ford* and *Panetti* by not "refer[ring] the matter to a qualified fact-finder for a fair hearing at which each of the parties could present evidence relevant to Cole's competency." *Cole v. Griffith,* No. 4:05CV131, Slip Op. at 11, 2015 WL 1636429 (E.D.Mo. April 13, 2015). Curiously, the district court suggests that

if the Missouri Supreme Court had done far less and explicitly found that Cole had not made a threshold showing of incompetency, its reasoning would have passed constitutional muster. *Id.* at 11–12. Accordingly, the district court granted Cole's motion for a stay of execution. The state appeals.

Under 28 U.S.C. § 2254, a federal court cannot grant habeas relief on any claim that was adjudicated on the merits in state court unless the decision was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, "[a] state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable." *Cole v. Roper,* 623 F.3d 1183, 1187 (8th Cir. 2010). Because the Missouri Supreme Court's decision does not fit within any of these exceptions, it is entitled to deference and Cole is not entitled to relief.

*Panetti* instructs that " 'a constitutionally acceptable procedure may be far less formal than a trial.' " *Panetti,* 551 U.S. at 949, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 427, 106 S.Ct. 2595) (Powell, J., concurring). The "basic requirements" of due process include "an opportunity to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination.' " *Id.*

at 950, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 427, 106 S.Ct. 2595); *see also Panetti,* 551 U.S. at 951, 127 S.Ct. 2842 ("[The state court] failed to provide petitioner with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts."); *Ford,* 477 U.S. at 424, 106 S.Ct. 2595 (Powell, J., concurring) (explaining that the determination of sanity "appear[ed] to have been made *solely* on the basis of the examinations performed by state-appointed psychiatrists").

■ Even if the state court incorrectly decided the due process issue, it was not an unreasonable application of *Ford* or *Panetti* to reach the merits of Cole's incompetency claim without a more formal hearing. Because it is an original proceeding, the Missouri Supreme Court initially evaluated Cole's motion and then sequentially, as the finder of fact and concluder of law under Missouri's habeas rules, examined the record and determined that Cole remained competent. Cole submitted Dr. Logan's expert opinion, and Dr. Logan had a chance to respond to the state's evidence. In addition, Cole's counsel presented written arguments about Dr. Logan's opinion. The Missouri Supreme Court's determination that this constituted all of the hearing and/or process required by *Panetti* and *Ford* does not violate § 2254(d). In fact, Cole received far more process than the petitioners in *Ford* and *Panetti,* and the specific procedural deficiencies present in those cases are not present here. Without more direction from the Supreme Court about the contours of due process in this context, we cannot say that the Supreme Court of Missouri unreasonably applied *Ford* or *Panetti.*

■ Furthermore, a federal court is bound by the state court's factual findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Factual determinations made by state courts are presumed correct and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Nicklasson v. Roper,* 491 F.3d 830, 834 (8th Cir.2007); see also § 2254(e)(1). A factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). The existence of some contrary evidence in the record does not suffice to show that the state court's factual determination was unreasonable. *Id.* at 302–03, 130 S.Ct. 841.

■ The Missouri Supreme Court did not make an unreasonable determination of facts in light of the evidence presented to it. Because Cole has previously been determined competent to stand trial, he faced a presumption of competency. *Ford,* 477 U.S. at 426, 106 S.Ct. 2595. The Missouri Supreme Court's finding that Cole's proffered evidence did not rebut the presumption of competency is itself presumed to be correct. And Cole has not presented clear and convincing evidence to the contrary in his federal habeas proceeding, especially in light of the state's proffer of Cole's recorded telephone conversations. The Missouri Supreme Court reasonably determined that Cole rationally understood his death sentence and the reasons for it as demonstrated, among other things, by a recorded conversation as recently as March 9, 2015. In this conversation, he discussed the issues with execution drug protocols in other states, the issues with his own murder trial, and his faith in God that "this thing will turn around." *Missouri ex rel. Cole v. Griffith,* No. SC94880, Maj. Slip Op. at 19.

Because the Missouri Supreme Court's adjudication of Cole's competency claim was not contrary to, or an unreasonable determination of, Supreme Court precedent, and because it did not involve an unreasonable determination of the facts in light of the evidence presented to it, we reverse the district court and vacate the court's stay of execution.

GRUENDER, Circuit Judge, concurring, with whom Judge BEAM joins.

I concur in Judge Beam's opinion for the court. I write separately to add the following observations.

By erroneously concluding that the Supreme Court of Missouri unreasonably applied *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and *Panetti v. Quarterman*, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the district court abused its discretion in granting a stay of execution. *See Middleton v. Roper*, 759 F.3d 833, 835 (8th Cir. 2014) (per curiam). In order for Cole to be entitled to relief, the Supreme Court of Missouri's adjudication must have (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In considering whether a state court unreasonably applied clearly established Federal law, our court has explained that "[a] state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable." *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir.2010).

"Under *Ford*, once a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment ... entitles him to an adjudication to determine his condition." *Panetti*, 551 U.S. at 934–35, 127 S.Ct. 2842. However, "a constitutionally acceptable procedure may be far less formal than a trial." *Id.* at 949, 127 S.Ct. 2842 (quoting *Ford*, 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment)). *Panetti* instructs that the "basic requirements" of due process include "an opportunity to submit 'evidence and argument from prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination.'" *Id.* at 950, 127 S.Ct. 2842 (quoting *Ford*, 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment)). The processes employed in *Panetti* and *Ford* ran afoul of these basic requirements.

Both *Panetti* and Justice Powell's concurrence in *Ford* left open the question of whether, in an appropriate case, additional procedures beyond the "basic requirements" of due process may be constitutionally required. *Panetti*, 551 U.S. at 952, 127 S.Ct. 2842; *Ford*, 477 U.S. at 426–27, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment). However, Justice Powell remarked that "ordinary adversarial procedures—complete with live testimony, cross-examination, and oral argument by counsel—are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity." *Ford*, 477 U.S. at 426, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment). And the *Panetti* Court reiterated Justice Powell's statement from *Ford* that "a State 'should have substantial leeway to determine what process best balances the various interests at stake' once it has met

the 'basic requirements' required by due process." 551 U.S. at 949–50, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment)).

It was not an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to reach the merits of Cole's competency claim on the basis of Cole's submissions, the state's response, and Cole's reply. The Supreme Court of Missouri noted that, when Cole filed his state petition, "he submitted his counsel's argument and his own evidence, including expert psychiatric evidence." Moreover, after the state responded with argument and evidence of its own, "Mr. Cole had the further opportunity to respond to the state's evidence with his counsel's argument and evidence." In particular, Dr. Logan, a psychiatrist who had examined Cole, offered further opinions about Cole's competency in response to the state's evidence. Furthermore, at this time, Cole also submitted a report prepared in 2002 by Dr. Michael Stacy, a psychologist who examined him, as well as the affidavit of another attorney. In light of Cole's two opportunities to present evidence and arguments, it was not an unreasonable application of *Ford* and *Panetti* to conclude, as the state court did, that "Mr. Cole has not been deprived of an opportunity to be heard."[1] As the *Panetti* Court explained, the "basic requirements" of due process

include "an opportunity to submit 'evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's [evidence].' " 551 U.S. at 950, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment)). Cole twice had such an opportunity.

In reaching a contrary conclusion, the district court opined that *Panetti* "made clear that an actual hearing, which must include notice and the opportunity to present evidence in addition to that of the 'threshold showing,' was required." In *Panetti,* the petitioner initially submitted a "letter and a declaration from two individuals, a psychologist and a law professor, who had interviewed [him] while on death row." 551 U.S. at 938, 127 S.Ct. 2842. The state trial court then appointed two experts, who opined that Panetti was competent to be executed. *Id.* at 939–40, 127 S.Ct. 2842. The court subsequently issued an order finding Panetti competent that "implied that its determination of petitioner's competency was made solely on the basis of the examinations performed by the psychiatrists it had appointed." *Id.* at 951, 127 S.Ct. 2842. In response to this process, the *Panetti* court reasoned as follows: "*After* a prisoner has made the requisite threshold showing, *Ford* requires, at a minimum, that a court allow a prisoner's counsel the opportunity to make an ade-

---

1. Although, as the dissent notes, Justice Powell's opinion in *Ford* and the *Panetti* Court stated that a "fair hearing" is required, these decisions do not define the parameters of such a hearing. Rather, they only clearly establish that (1) something more than the processes provided there are constitutionally required and (2) a constitutionally acceptable hearing "may be far less formal than a trial." *See Ford,* 477 U.S. at 424, 426–27, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment); *Panetti,* 551 U.S. at 949–52, 127 S.Ct. 2842. Neither *Ford* nor

*Panetti* clearly establishes that providing Cole two opportunities to present evidence and argument, as the Supreme Court of Missouri did, is constitutionally inadequate. *See Ford,* 477 U.S. at 426, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment) ("[O]rdinary adversarial procedures—complete with live testimony, cross-examination, and oral argument by counsel—are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity.").

quate response to evidence solicited by the state court." *Id.* at 952, 127 S.Ct. 2842 (emphasis added).

■ Cole makes much of the two-step nature of this process—in particular, the *Panetti* Court's statement that a petitioner's opportunity to be heard comes "[a]fter" he makes a threshold showing. *Id.* However, it was not unreasonable to refuse Cole a third opportunity to present evidence and arguments. *See Cole,* 623 F.3d at 1187 ("A state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable."). *Panetti* does not clearly establish that a petitioner is entitled to an opportunity to present evidence and argument even if he already has had two such chances. As the *Panetti* Court emphasized, a state " 'should have *substantial leeway* to determine what process best balances the various interests at stake' once it has met the 'basic requirements' required by due process." 551 U.S. at 949–50, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment)) (emphasis added). In light of the "substantial leeway" left to the states, I cannot say that the Supreme Court of Missouri's refusal to give Cole a third opportunity to present evidence and argument "involved an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Moreover, I note that affording a petitioner the opportunity to be heard avoids a process that "invites arbitrariness and error by preventing the affected parties from offering contrary med-

ical evidence or even from explaining the inadequacies of the State's examinations." *Ford,* 477 U.S. at 424, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment). Because Cole offered his own evidence and argument and responded to the state's submissions, such a concern is not present here.[2]

In addition, it was a reasonable application of *Ford* and *Panetti* not to grant Cole additional procedures beyond the basic requirements of due process. It is true that the *Panetti* Court and Justice Powell's concurrence in *Ford* left open the possibility that further process could be constitutionally required in an appropriate case. However, declining to extend *Ford* and *Panetti* to require additional process, as the state court did, does not an unreasonable application make. *See White v. Woodall,* 572 U.S. ——, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require a state court to *extend* that precedent or license federal courts to treat the failure to do so as error."). *Ford* and *Panetti* do not clearly establish that additional process is required.

BYE, Circuit Judge, dissenting.

The proceedings before this Court and before the Supreme Court of Missouri which led to the instant habeas petition pertain to the question of whether Andre Cole is entitled to a hearing to determine his competency—not whether he is competent. A majority of the Supreme Court of Missouri concluded Cole was not entitled to a hearing to determine his competency

2. Cole suggests that he would have offered further evidence of his incompetency had he been afforded another opportunity to present evidence. However, Cole's brief does not identify this evidence beyond speculating that

he could have obtained "other expert analyses." Moreover, Cole had strong incentives to put forth his best evidence in his first two submissions before the Supreme Court of Missouri.

to be executed—even assuming he made the required threshold showing for the necessity of such a hearing—because it determined he was competent. In doing so, the court reached a decision that was contrary to and an unreasonable application of clearly established Federal law and made an unreasonable determination of the facts presented before it. Accordingly, I would affirm the district court's decision to grant Cole's petition for writ of habeas corpus and stay his execution while the appeal proceeds.

Because we review petitions for writ of habeas corpus under standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *Edwards v. Roper,* 688 F.3d 449, 453 (8th Cir.2012), Cole is entitled to relief if he demonstrates the adjudication by the Supreme Court of Missouri "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). I believe Cole satisfies both prongs.

## I

"[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Ford v. Wainwright,* 477 U.S. 399, 409–10, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Justice Powell's concurrence in *Ford* sets forth the clearly-established minimal means Missouri must provide for determining Cole's competency before it can execute him. *See Panetti v. Quarterman,* 551 U.S. 930, 949, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). Under this minimal

test, a state "may require a substantial threshold showing of insanity merely to trigger the hearing process" to determine the individual's competency. *Ford,* 477 U.S. at 426, 106 S.Ct. 2595. "Once a prisoner seeking a stay of execution has made 'a substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." *Panetti,* 551 U.S. at 949, 127 S.Ct. 2842 (quoting *Ford,* 477 U.S. at 426, 106 S.Ct. 2595). The Supreme Court's decisions in *Ford* and *Panetti* clearly established a sequential process for determining an individual's competency: (1) whether the individual presented sufficient evidence to trigger the need for a hearing; and (2) based on the evidence presented at such a later hearing, whether the individual is competent to be executed. Here, the Supreme Court of Missouri afforded Cole no hearing, even though it assumed he presented sufficient evidence to trigger the requirement for a hearing. Instead, the court *sua sponte* evaluated the evidence presented in the record thus far and found Cole competent. It is undisputed Cole received *no hearing* in this case. The mere opportunity to file a brief before an appellate court as part of a writ proceeding cannot meet the definition of a "fair hearing," however that may be defined, particularly without notice that it would be the final opportunity to show competency.

Although the Supreme Court of Missouri properly identified *Ford* and *Panetti* as the standard by which to determine Cole's competency, it ignored their mandate to provide him with a "fair hearing." The majority of the court held that "[e]ven assuming Mr. Cole made a substantial threshold showing of insanity, he is not entitled to any further process under *Ford* and *Panetti* because he has been afforded

the opportunity to submit argument and evidence."[3] The court cited no authority—and I have found none—for its novel approach of merging the sequential steps of determining the threshold for the necessity of a hearing and the individual's competency. Indeed, the Supreme Court of Missouri's own precedent provides that once Cole met the substantial threshold showing, he was "entitled to a *full hearing* to determine his competence." *Middleton v. Russell,* 435 S.W.3d 83, 84 (Mo.2014) (emphasis added). The majority attempts to justify this approach by suggesting the Supreme Court of Missouri applied the steps sequentially but in one fell swoop. The requirement of sequential steps does not exist to provide a mere opportunity for additional reflection on the evidence presented at the threshold showing. It exists to allow an individual to marshal all evidence available to him to propel him not only past the minimal standard of a threshold showing but on the ultimate issue of his competency. The process employed in this case thwarts that exact purpose by prematurely adjudicating Cole's competency on the more limited record of a threshold showing. In the civil context, it would be the equivalent of denying summary judgment but entering judgment in favor of that party based on an evaluation of the evidence.

The process employed in this case is particularly egregious because until the Supreme Court of Missouri's unprecedented decision, Cole had no reason to believe he was required to marshal all evidence supporting his lack of competency under the expedited route of a petition for habeas relief. Indeed, the Supreme Court of Missouri has stated Cole could expect a "full hearing to determine his competence." *Middleton,* 435 S.W.3d at 84. In his petition, Cole identified specific additional evidence, including testimony from other expert witnesses regarding his mental state and testimony from fellow inmates to corroborate Cole's change in behavior in recent months, that he would introduce at a full competency hearing, and would have attempted to introduce in his petition had he known he would be required to show the full merits of his competency rather than just a threshold showing. To deny Cole the opportunity to present such evidence after finding he is entitled to a hearing does not comport with the specific mandate of *Ford* and *Panetti* requiring a two-step determination or their guiding principle. *See Ford,* 477 U.S. at 414, 106 S.Ct. 2595 (Marshall, J.) ("[A]ny procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate."); *id.* at 424, 106 S.Ct. 2595 (Powell, J. concurring in part and concurring in the judgment) ("[F]undamental fairness is the hallmark of the procedural protections afforded by the Due Process Clause."). Given that this determination involves the "especial concern ... that execution is the most irremediable and unfathomable of penalties," *id.* at 411, 106 S.Ct. 2595, I find no persuasive reason to rush to a determi-

---

**3.** Missouri argues the Supreme Court of Missouri also held that Cole failed to make a substantial threshold of incompetence. The court's opinion made no such finding. To the extent Missouri attempts to create ambiguity in the opinion by quoting one sentence out of context, I find the argument entirely unpersuasive. Plainly, the Supreme Court of Missouri knows how to make such an explicit finding. *See Clayton v. Griffith,* No. SC 94841, 457 S.W.3d 735, 736–37, 2015 WL 1442957, at *1 (Mo. Mar. 14, 2015); *Middleton v. Russell,* 435 S.W.3d 83, 86 (Mo.2014). It did not do so here, and its opinion cannot be reasonably read as doing so implicitly.

nation on an incomplete record after an individual has made the threshold showing.

Under Missouri's latest approach, Cole is unlikely to ever receive a "fair hearing." If Cole presents too little evidence to support his claim that he is not competent, he will fail to meet the required threshold showing and will not receive a hearing. If Cole presents sufficient evidence, the court would simply proceed to weighing the evidence, and once again, Cole is left without a fair hearing. Missouri appears to suggest that Cole's opportunity to present evidence and argument in the context of a writ proceeding to satisfy his initial threshold is sufficient to constitute a "fair hearing" on the merits of Cole's incompetency claim. But no authority holds as such, and there is no plausible way to read *Ford* and *Panetti* as permitting such a short-circuited evaluation of the complex question of Cole's competency. "[T]he competency determination depends substantially on expert analysis in a discipline fraught with 'subtleties and nuances.'" *Ford*, 477 U.S. at 426, 106 S.Ct. 2595. The appropriate means of deciding credibility and factual determinations—particularly given the consequences of executing Cole unconstitutionally—is an evidentiary hearing. *Cf., Franco v. United States*, 762 F.3d 761, 765 (8th Cir.2014) (holding that the district court abused its discretion in finding one affidavit more credible than the other without the benefit of an evidentiary hearing).

As three members of the Supreme Court of Missouri aptly recognized, the majority's novel approach in this case was "completely improper and unprecedented." I agree.

II

Unlike its prior decisions in similar cases, the Supreme Court of Missouri assumed Cole met the substantial threshold required to entitle him to a hearing. I agree that there is no basis to find he has not.

Missouri urges this Court, however, to nevertheless make this complex and evidence-heavy finding, despite the Supreme Court of Missouri's refusal to do so—most likely because they did not believe it could be made.[4] First, the rule of alternative affirmance Missouri urges us to apply in this case does not apply when the decision is a "conspicuous misapplication of Supreme Court precedent that makes the state court's decision contrary to clearly established law." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir.2012) (internal quotation marks omitted). Second, Missouri offers only a conclusory assertion that the threshold has not been met, and I believe they have waived the argument. *Cubillos v. Holder*, 565 F.3d 1054, 1058 n. 7 (8th Cir.2009) (noting undeveloped arguments are generally deemed waived). Third, while I believe it is unnecessary to reach the issue, Cole has presented ample evidence to satisfy the threshold showing.

In *Panetti*, the United States Supreme Court clarified *Ford's* competency and substantial threshold showing standards. Considering delusions suffered by Panetti, the Supreme Court concluded:

> The principles set forth in *Ford* are put at risk by a rule that deems delusions relevant only with respect to the State's announced reason for a punishment or the fact of an imminent execution as opposed to the real interests the State seeks to vindicate. We likewise find no

---

4. The Supreme Court of Missouri offered no reason for sharply departing from its prior cases finding the individual failed to make the substantial threshold showing, but the most plausible reason for why it assumed the threshold was satisfied is that there was no basis to hold otherwise in this case.

support elsewhere in *Ford*, including in its discussions of the common law and the state standards, for the proposition that a prisoner is automatically foreclosed from demonstrating incompetency once a court has found he can identify the stated reason for his execution. A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter.

\* \* \*

It is therefore error to derive from *Ford*, and the substantive standard for incompetency its opinion broadly identify, a strict test for competency that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted.

551 U.S. at 959–960, 127 S.Ct. 2842. Cole presented sufficient evidence to meet this threshold showing.

First, Cole presented the opinion of forensic psychiatrist William S. Logan, M.D., who after evaluating Cole on February 20, 2015, concluded that Cole "lack[ed] the capacity to understand the nature and purpose of the punishment about to be imposed upon him or matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out." In his report, Dr. Logan noted that Cole could not sleep because of continuous "supernatural" voices in his head, which talk to him, argue with him, and threaten him. Although Cole was able to "recall the historical elements of his case" during his interview with Dr. Logan, Cole became disorganized and "digressed to talking about his emotional state." Based on his psychiatric evaluation, Dr. Logan concluded that Cole is "depressed with prominent symptoms of psychosis which adversely affect his comprehension and understanding" and that Cole's "hallucinations have compromised his understanding to the point he has gross delusions which prevent him from comprehending or forming a rational understanding of the reason for the execution to which he has been sentenced."

Second, Cole submitted affidavits from two of his attorneys and one former attorney explaining Cole's mental health has deteriorated since 2011 and especially in the past year. Although his "impaired mental state is not always apparent from a brief or casual conversation," he "abruptly jumps from one topic to another," complains of voices in his head, and acts in a paranoid and agitated manner. According to the voices in Cole's head, he will be discharged from prison at age 65 to go on disability and live with his mother. On their most recent visit with Cole, the attorneys observed Cole talking to them in code, "changing in mid-sentence from normal speech to whispering or mouthing his words and making agitated hand gestures," looking from side to side when voices appeared to be talking to him. These sworn affidavits from individuals who closely interact with Cole strongly corroborate the medical findings of Dr. Logan.

The Supreme Court of Missouri offered no reason for why this evidence does not demonstrate the required threshold showing. Although the court discredited the evidence, it did so under the rubric of evaluating the merits of Cole's competence—not merely whether a threshold showing had been made. I do not believe any of its reasons for doing so demonstrate Cole's failure to meet the threshold showing.

The Supreme Court of Missouri did not have any other expert evaluations of Cole's mental state[5] or testimony from individuals with whom he interacts on a frequent basis. Instead, in finding Cole competent to be executed, the court primarily relied on transcripts of several of Cole's recorded telephone conversations. Even if the court could have properly considered the evidence in the threshold analysis, I do not believe it lessened Cole's substantial evidence of incompetence. It was unreasonable for the court to discount the expert testimony of a licensed psychiatrist without any record evidence of Cole's current state of mind. The court's own perceptions and inferences from snippets of telephone conversations in which Cole exhibited concern for his mother's well-being, for example, cannot be a substitute for a qualified expert's analysis of Cole's current mental state.

The court also placed emphasis on the fact that Cole was found competent at the time of his trial. Although Cole is presumed to be competent, his mental health status at the time of his trial is minimally relevant for determining his mental health almost 15 years later. *See Panetti,* 551 U.S. at 934, 127 S.Ct. 2842 ("Prior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition."). Furthermore, there is evidence in the record that Cole suffered from mental health issues such as major depression around the time of his trial.

The court also discredited Dr. Logan's testimony based on a finding in a prior proceeding that Dr. Logan was not credible.[6] Yet, the court cited no authority for the notion that experts become disposable after their first unfavorable credibility finding. The basis for discrediting Dr. Logan's opinions in a prior proceeding does not provide a sufficient reason alone to discredit the specific opinions he formed in this case.

In sum, I do not believe that the court could reasonably discount the expert opinion of a medical professional and the testimony of the two people who most closely interact with him, without any credible evidence, at the threshold proceeding to determine if Cole is even entitled to a hearing. Because Cole met the substantial threshold showing, he is entitled to an evidentiary hearing. *See Thompson v. Bell,* 580 F.3d 423, 436 (6th Cir.2009) ("The evidence Thompson submitted was undoubtedly a 'substantial threshold showing,' and therefore an evidentiary hearing should have been held.").

## III

For these reasons, I would grant Cole's petition for writ of habeas corpus and stay his execution pending the resolution of this issue.

---

**5.** No one argues, and I do not believe, Dr. Whitehead's quick "wellness check" through Cole's cell door can be considered a sufficient mental health evaluation.

**6.** It is notable that the determination of Dr. Logan's credibility in Cole's post-trial proceeding came after an evidentiary hearing.